IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| KINGSLEY AKUGUE-IDEHEN | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: |
| | ) | |
| v. | ) | |
| | ) | |
| VIVINT SOLAR | ) | |
| | ) | |
| Defendant. | ) | |

---

**COMPLAINT**
(Jury Trial Demanded)

---

COMES NOW Plaintiff, Kingsley Akugue-Idehen, by and through his attorney of Record, Charles Tucker, Jr., and files his *Complaint* for damages against Defendant Vivant Solar and for cause would show unto the Court the following:

JURISDICTION AND VENUE

1. This action is being brought pursuant to 28 U.S.C. § 1331, 28 U.S.C. Section 1343(a)(3) and 42 U.S.C. § 1983 and includes any and all federal law claims plead herein for which jurisdiction and venue is attached.

2. Venue is proper in this district, pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

PARTIES

3. Plaintiff, Kingsley Akugue-Idehen (hereinafter "Plaintiff"), is a black male, over the age of 19 and is a resident of Prince George County, Maryland.

4. Defendant, Vivint Solar (hereinafter "Defendant"), is a corporation with its principal place of business in Lehi, Utah and registered to do business in the State of Maryland.

5.  At all times relevant to this action, Defendant was and is an employer as defined under Title VII, 42 U.S.C. § 2000e(b).

6.  At all times relevant to this action, Plaintiff was an "employee" under 42 U.S.C. § 2000e(f) Title VII.

<u>ADMINISTRATIVE REMEDIES</u>

7.  On July 17, 2018, Plaintiff filed a Charge of Discrimination with the Maryland Commission on Civil Rights and the Equal Employment Opportunity Commission. The charge alleges race discrimination and disparate treatment.

8.  The EEOC conducted an investigation regarding the allegations on July 25, 2018. The EEOC was "unable to conclude that the information obtained established violations of the statutes."

9.  The *Complaint* is being filed within (90) days of the Plaintiff's receipt of the Notice of Right to Sue. Plaintiff has complied with all stator and administrative prerequisites to filing suit.

<u>FACTS</u>

10. Plaintiff, a black male, was hired to work for Defendant's installation department on January 13th, 2014.

11. All new employees hired in the same or similar position(s) as Plaintiff are provided with a tool package by Defendant.

12. Included in the tool package are harnesses, ropes and other tools required for the duties of the position.

13. The tools packages are provided to the newly hired employees during training.

14. Plaintiff immediately began training after he was hired.

15. During training, Defendant disbursed the tool packages to the newly hired employees.

16. All of the newly hired employees received tool packages except for Plaintiff.

17. Plaintiff was promised that a new batch of tools would be disbursed a week later.

18. Plaintiff did not receive his tool package until forty-fives (45) days following his training.

19. Plaintiff was initially provided with new a tool package containing brand new tools.

20. Plaintiff tools were quickly taken and given to Bill Fernakles.

21. Bill Fernakles is a while male.

22. Plaintiff's new tool package was taken and given to Bill Fernakles by Steve Portlock.

23. Steve Portlock is a white male and, at that time, the Operations Manager.

24. Plaintiff was then given the tools that were already being used by Bill Fernakles.

25. Plaintiff protested and reported this act.

26. Plaintiff was threatened with "if you don't want it then you should quit."

27. Plaintiff worked with Nate Bowen, Lead Tech, and Bill Fernakles, second in command to Bowen, for about three months.

28. Bill Fernakles then became Lead Tech and Plaintiff was promoted to second in command.

29. After an additional 90 days, Plaintiff was promoted again to Lead Tech.

30. When Plaintiff became Lead Tech, Plaintiff was assigned a clean, almost new vehicle to use in his duties.

31. Before beginning his first assignment, Plaintiff was called into the office.

32. Plaintiff was required to give his assigned vehicle to Bill Fernakles.

33. Plaintiff was then provided the vehicle that had been used by Steve Portlock.

34. That vehicle was not clean and had been extensively used.

35. Plaintiff protested and reported this occurrence.

36.  No action was ever taken related to this occurrence.

37. Defendant has a history promoting its employees based on seniority.

38. Later during Plaintiff's employment, the position of Assistant Operations Manager became available.

39. Plaintiff was the most senior employee eligible for the position of Assistant Operations Manager.

40. Plaintiff had a good professional history within his current position and was poised for the position of Assistant Operations Manager.

41. Nick Butt received the position of Assistant Operations Manager from Nate Bowen.

42. Nick Butt is a white male.

43. Nick Butt was extremely less experienced in installation as Plaintiff.

44. Nick Butt was initially working in the Defendant's sales department.

45. Nick Butt had transitioned into the installation department only a few weeks prior to becoming Assistant Operations Manager.

46. Defendant eventually merged with a company called SunEdison.

47. As a result of the merger, all Lead Techs were transitioned into the position of foreman.

48. All of the white Lead Techs were transitioned in less than three months.

49. Plaintiff was transitioned after the new Operations Manager Chris Parrot, a white male, took over and feared Plaintiff would file a complaint.

50. Plaintiff had over a year in superiority of Chris Parrot.

51. Two months after Plaintiff was transitioned to foreman, he was demoted by Chris Parrot.

52. Plaintiff was informed that the reason he was demoted was become he refused to be forced to work six to seven days per week while white employees could choose not to work as many days.

53. Plaintiff observed on three different occasions fellow employees Ryan Love and Justin Portlock tell Wallace Stickley, Assistant Operations Manager, and Chris Parrot that they were not going to do a job that had already been assigned to them.

54. When asked by Wallace Stickley and Chris Parrot who should do the work, Ryan Love and Justin Portlock responded "get Kingsley or Oscar (a Hispanic male) to do it."

55. The work was then assigned to Plaintiff or "Oscar."

56. Ryan Love, Justin Portlock, Wallace Stickley, and Chris Parrot are all white males.

57. Ryan Love and Justin Portlock never received any form of reprimand or punishment for refusing to do work assigned to them.

58. Plaintiff reported these occurrences to Wallace Stickley.

59. Wallace Stickley responded to Plaintiff that he was "aggressive."

60. Eventually, a second Assistant Operations Manager Position became available.

61. Eligible employees were asked to interview for the Assistant Operations Manager position.

62. Approximately five employees, including Plaintiff, interviewed for the position.

63. Plaintiff was the next to last employee to interview for the position.

64. Plaintiff was able to observe the interviews of the other eligible employees from the waiting area prior to his interview.

65. The interviews were being conducted by Chris Parrot, Ed Quist, and Bruce Scott.

66. Ed Quist and Bruce Scott are both white males and Chris Parrot's superiors.

67. Ed Quist, Bruce Scott, and Chris Parrot were all engaged and very concentrated on all of the interviews leading up to Plaintiff's interview.

68. During Plaintiff's interview, Bruce Scott and Ed Quist were facing each other and carrying on a personal conversation as Chris Parrot asked Plaintiff questions.

69. Bruce Scott and Ed Quist did ask a single question to Plaintiff.

70. Plaintiff's interview lasted approximately three minutes.

71. A white male employee, who received an engaging interview, ultimately received the Administrative Operations Manager position.

72. Defendant requested certain technicians, including Plaintiff, from Plaintiff's location to travel to Defendant's headquarters in Utah.

73. Following the technicians' service at Defendant's headquarters, all employees, except Plaintiff, were paid upon return.

74. Plaintiff was not paid until ninety (90) days later.

75. Following this, Plaintiff and three other employees transitioned from installation to the service department.

76. When Plaintiff transitioned, Plaintiff received a cut in his pay while the other three employees did not.

77. Plaintiff reported this to Maureen Brown in the human resources department.

78. However, his report was met with aggression from Maureen Bown and no investigation ever occurred.

79. Plaintiff was assigned to provide service to a customer at the customer's home. Upon arrival, the customer pulled a gun on Plaintiff.

80. Plaintiff left the home and called the police. Plaintiff notified Defendant of this occurrence.

81. The manager at the time, Paul Bissom, called Plaintiff and asked him to to send an email describing the event so an investigation could take place.

82. No investigation into the event ever occurred.

83. Defendant dispatched Plaintiff to the same home twice. Plaintiff had to decline providing service to the home and remind Defendant as to the life threatening event he faced.

84. While employed, Plaintiff suffered many injuries as did many other technicians.

85. Plaintiff was not given the same treatment as white employees who suffered injuries while working.

86. On one particular occasion, Ted Wiblin, a white male claimed an injury from an installation job.

87. Ted Wiblin was placed on "light duty" and received his same same pay.

88. Plaintiff also claimed an injury while performing his installation duties.

89. Plaintiff was forced to beg for a transfer to the service department and received a reduction in his pay.

90. On April 17, 2018, Plaintiff was falsely accused of being involved in a time fraud and terminated.

CAUSES OF ACTION

Count I
Race Discrimination

91. Plaintiff re-alleges paragraphs 1-90 of the *Complaint* as if set out fully herein.

92. Plaintiff is a member of a protected class who received unequal treatment in violation of Title VII of the Civil Rights Act of 1964.

93. The acts and volitions of Defendant resulted in a knowing, willful, and intentional violation of Plaintiff's rights guaranteed under Title VII of the Civil Rights Act of 1964. Such unlawful employment practices violate 42 U.S.C. Section 2000e-3.

94. Specifically, Plaintiff was repeatedly passed over for promotions in favor of white employees in similarly situated positions as Plaintiff.

95. Further, Plaintiff did not received treatment, tools, and materials equal to that of white employees in similarly situated positions as Plaintiff.

96. As a direct and proximate result of Defendant's unlawful and discriminatory conduct toward Plaintiff, Plaintiff lost wages and benefits and sustained other pecuniary loss.

97. Defendant's discriminatory practices, contempt, and disdain have been demeaning to Plaintiff and have caused him to suffer deep pain, humiliation, anxiety, and emotional distress.

98. The unlawful actions of Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

COUNT II
DISPARATE TREATMENT

99. Plaintiff re-alleges paragraphs 1-90 of the *Complaint* as if set out fully herein.

100.     Defendant has discriminated against Plaintiff in a manner that constitutes disparate treatment by treating Plaintiff differently than other similarly situated employees on account of his race.

101.     Specifically, Plaintiff was repeatedly passed over for promotions in favor of white employees who were in similarly situated positions as Plaintiff.

102.     Further, Plaintiff did not received treatment, tools, and materials equal to that of white male employees who were in similarly situated positions as Plaintiff.

103.     The aforementioned acts of Defendant are willful, reckless, and malicious acts of unlawful discrimination against Plaintiff because of his race in violations of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

104.     As a result of Defendant's actions, Plaintiff as suffered emotional distress, inconvenience, lost wages and benefits, and other damages.

COUNT III
CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. § 1981

105.     Plaintiff re-alleges paragraphs 1-90 of the *Complaint* as if set out fully herein.

106.     Defendant subjected Plaintiff to an unwelcomed hostile work environment based on his race, Black, through severe and pervasive actions that altered the conditions of his employment.

107.     These actions included, but not limited to, subjecting him to discrimination, interfering with his work performance, not addressing his complaints about discrimination, harassment, and disparate treatment.

108.     Despite Plaintiff's repeated complaints to supervisors, about this hostile work environment, Defendant failed to take any appropriate action to redress the discriminatory and hostile work conditions imposed on him.

109.     The aforementioned acts of Defendants are willful, reckless, and malicious acts of unlawful discrimination against Plaintiff because of his race and have deprived Plaintiff the enjoyment of all benefits, privileges, terms, and conditions of his employment relationship in violation of 42 U.S.C. § 1981.

110.     Such unlawful employment practices violate 42 U.S.C. §1981, Title VII of the Civil Rights Acts of 1964, as amended as well as 42 U.S.C. §2000e, *et. seq.*

DAMAGES

111.      As a consequence of the foregoing misconduct of Defendant, Plaintiff sustained

economic damages, pain and suffering, great mental stress, depression, and humiliation.

112.      As a consequence of the forgoing misconduct of Defendant, Plaintiff has damages

in an amount exceeding the jurisdictional requirements of the Court.

<u>RELIEF</u>

113.      Plaintiff request that the Court issue the following relief:

    a.   Enter declaratory relief declaring that Defendant has engaged in race

        discrimination, disparate treatment, and constitutional violations under 42 U.S.C.

        § 1983;

    b.   Award Plaintiff compensatory and punitive damages for all the mentioned causes

        of action in an amount to be determined by a jury of her peers;

    c.   Award Plaintiff attorney's fees, cost and expenses of litigation; and

    d.   Award such other relief to which Plaintiff may be entitled to under law.


**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands judgment against

Defendant in an amount exceeding the jurisdiction requirements of this Court, all

together with Court costs, including attorney's fees, plus pre and post judgment interest,

and for any other relief this Court deems just and proper.


Respectfully submitted this 26th day of October 2018.

Kingsley Akugue-Idehen

*/s/ Charles Tucker, Jr.*
Tucker Moore Law Group, LLP
8181 Professional Place, Suite 117
Hyattsville, Maryland 20785

Charles@tuckerlawgroupllp.com